# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1237V**
**Filed: August 10, 2026**

JACK ROBERT DAY,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Special Master Horner

*David John Carney, Green & Schafle, LLC, Philadelphia, PA, for petitioner.*
*Tyler King, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On April 16, 2021, petitioner, Jack Robert Day, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq*. (2012), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza vaccination he received on September 27, 2018. (ECF No. 1.) On January 24, 2025, petitioner was found entitled to compensation. (ECF No. 68.)

After petitioner was found entitled to compensation, the parties were unable to informally resolve the appropriate amount of compensation. The issue of damages was fully briefed. (ECF Nos. 79, 81, 83.) Petitioner requested an award for actual pain and suffering of $185,000.00, as well as an award of $1,000.00 per year for projected pain and suffering. However, respondent instead proposed an award of $115,000.00. No other damages were asserted. An oral argument was held on July 22, 2026, and the undersigned issued an oral ruling as part of that proceeding. An excerpt of the resulting transcript including the oral ruling is attached hereto. In light of the preceding, I have

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

determined that the parties have had a full and fair opportunity to present their cases and that it is appropriate to resolve damages on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *see also Kreizenbeck v. Sec'y of Health & Human Servs*., 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record"). Considering the arguments raised by the parties and the record as a whole, I find for the reasons discussed in the attached transcript that a reasonable and appropriate award for petitioner's actual pain and suffering is $170,000.00 and that an award for projected pain and suffering is not preponderantly supported.

Therefore, **I award petitioner a lump sum payment of $170,000.00 representing compensation for actual pain and suffering, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement to petitioner**. This amount represents compensation for all damages available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[2]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

SPECIAL MASTER'S RULING

THE COURT: In ruling on the damages in this case, following the oral argument and consideration of the parties' briefs and the complete record, I incorporate by reference the legal standard I previously articulated in my decision in Baker v. Secretary of Health and Human Services, which is Number 21-1971V 2025 WL 1695810, and that's at page 5. And that's a Special Master Decision of May 23rd, 2025.

Just to very briefly summarize what that standard is, there's no formula for assessing pain and suffering. Three factors are typically considered: severity, duration, and awareness. However, only severity and duration are relevant in the context of SIRVA. It is appropriate for a special master to consider other prior decisions in determining award for pain and suffering, though none of those prior decisions are binding.

Although Petitioner discussed a number of prior decisions in his motion, he suggested the case is most comparable to three prior cases with regard to actual pain and suffering. Petitioner cited Hooper, 17-12V, where there was an award of $185,000 for pain and suffering in a case involving surgery, over 60 physical therapy sessions, and an overall two-plus-year course of pain and suffering.

Rice-Hanson, 20-1338V, awarded $175,000, where there was a surgery with 40 PT sessions, a cortisone

injection, and a duration of 26 months. Tumolo, at 16-343V, awarded $170,000 in a case involving surgery with 14 physical therapy sessions, two cortisone injections, and four-year duration.

By contrast, Respondent cites two cases as comparable. Etchebarren-Scholes, which is 22-840V, awarded $115,000, where there was surgery, two steroid injections, 12 physical therapy sessions, 26-month duration, and it was generally considered a mild SIRVA. Rector, 17-167V, awarded $120,000 for a case involving surgery with 35 PT sessions and 11-month total duration.

I'm mindful of prior decisions regarding damage for SIRVA, including the ones cited by the parties; however I do not merely rely on any one prior decision to determine the amount of Petitioner's damages in the case. Instead, I've reviewed the prior SIRVA awards, the arguments presented by the parties, and the totality of the evidentiary record.

Primary considerations informing pain and suffering in SIRVA are the severity and duration of the shoulder pain. Numerous aspects of Petitioner's medical history potentially speak to those issues, including the total duration of treatment and pain, the total duration of reduced range of motion, the length of time of active treatment, duration and outcome of physical therapy, other

modalities of treatment, such as steroid injections and surgeries, the severity of MRI or surgical findings, subjective reports of pain levels, and ultimate prognosis.

Here, Petitioner asserts that he experienced seven years of pain and suffering as of the time his motion was filed, including a surgery, specifically a reverse total shoulder arthroplasty with biceps tenodesis, 40 to 50 sessions of PT, and 5 cortisone injections. I'm citing ECF Number 97, pages 1 and 2 and 62 for that description.

Respondent does not dispute any of those specific facts, but stresses the Petitioner had significant gaps in treatment and successful PT efforts that significantly reduced his symptoms as of September of 2022. I'm going to note ECF Number 81, pages 10 and 11 for that, specifically Respondent cited Exhibit 9, page 1410.

I agree with Petitioner regarding the overall description of the course of his treatment, and I accept the recitation of the medical history as explained at pages 4 to 22 motion at ECF Number 79. However, consistent with Respondent's argument, I do not agree that Petitioner's pain and suffering has been uniform throughout that time. In particular, despite some of the records, including subjective reports of significant pain, for example, Exhibit 9, pages 513, 554, and 654, I find the Petitioner's overall initial pattern of treatment throughout the period from the

time of his vaccination through July of 2019, which included both a three-month delay in seeking treatment, followed by a five-month gap in treatment from January to May, is more consistent with mild pain accompanied by mild or moderate reduced range of motion.

Thereafter, Petitioner also had not preponderantly substantiated that he was suffering significant ongoing pain during the gap in treatment from July of 2019 through August of 2020. Although this longer gap from July '19 to August '20 does overlap at least in part with the COVID-19 pandemic, and Petitioner did testify in fact hearing that some of his later PT was canceled due to the pandemic.

I can't conclude that the pandemic was a significant factor in Petitioner's pattern of treatment for several reasons. First, the gaps in treatment that I've just noted started long before the beginning of the pandemic. Second, there were multiple significant gaps in treatment prior to the pandemic. Third, the medical record that was generated when Petitioner returned to care specifically stated that his condition had improved in the interim, providing a more likely explanation for discontinuance of treatment. And fourth, Petitioner ultimately did return to care while the pandemic was ongoing.

There was another gap in treatment, by the way,

from August of 2021 to November of 2021, and then it's only from November of 2021 onward that Petitioner became more consistent in seeking care, ultimately leading up to the surgery he underwent in October of 2023. In the motion, Petitioner acknowledges that it is reasonable to account for this type of delay in seeking treatment and these gaps in treatment in determining the severity and duration of pain and suffering. And for example, in Mishica v. Secretary of Health and Human Services, 2024 WL 6849251, Special Master decision of December 16, 2024, I similarly found that significant gaps in Petitioner's treatment history indicated that although the overall course of care spanned 60 months, the period of moderate pain was only about 15 months.

After the October 2023 surgery, Petitioner's symptoms remained significant in the post-surgical period, but as Petitioner observed in his motion, he made meaningful gains in post-surgical PT, and by August of 2024, he had only residual pain and movement limitations. For that, I'm citing ECF Number 79 at page 18, which cited Exhibit 21, pages 5 and 6.

Accordingly, I found that the Petitioner's period of significant pain and suffering was primarily the 33-month period from November of 2021, to August of 2024, during which time I conclude he suffered a moderate SIRVA. Before and after that period, his pain and suffering was likely

more mild and manageable.

I've considered Petitioner's testimony during the fact hearing in reaching this conclusion. However, while that testimony was sufficient for me to conclude that he experienced an onset of shoulder pain close in time to vaccination, I'm not persuaded that the testimony supports the idea that the severity of Petitioner's pain and suffering was disproportionate to the pattern of care that he sought.

As I noted during the oral argument, Petitioner's briefing does not actually identify any of his testimony as being relevant, and Counsel confirmed that he wasn't going to point me to any additional testimony. Accordingly, although the overall duration of Petitioner's injury was seven years, more than half of that time represented only mild pain and suffering by my interpretation of the records.

Balancing all of these considerations and considering the record as a whole and understanding that placing a specific dollar figure on an award of pain and suffering is always an exercise in rough justice, I find that $170,000 is a reasonable and appropriate award for actual pain and suffering in this case.

Recognizing that no comparison is perfect, especially given the number of variables involved in the course of treatment of a SIRVA, I find that comparison to

Tumolo is the most appropriate comparison. Similar to this case, Tumolo represented a situation in which Petitioner had a many-years-long course of SIRVA but with significant gaps in treatment, ultimately having active treatment for 20 months that included a surgery and several steroid injections and physical therapy.

Although the duration of this Petitioner's SIRVA was longer, severity of the Tumolo Petitioner's pain and suffering was more significant. Special Master concluded that Tumolo Petitioner's SIRVA was moderate to severe and she initially sought care promptly, whereas Petitioner's treatment, Petitioner's initial pattern of care was more consistent with milder and more manageable symptoms.

I'm not persuaded by Petitioner's comparison to Hooper. As the Tumolo Special Master observed, the Hooper case is distinguishable because that Petitioner suffered, "The worst case of frozen shoulder caused by the flu vaccine" that left the Petitioner's arm "nearly useless". That's Tumolo, 2020 WL 627911 at page 16.

By contrast, the cases cited by Respondent, I don't find those persuasive because they failed to capture the overall duration of Petitioner's injury in this case. However, I do not agree that an award for projected pain and suffering is preponderantly supported.

Petitioner cites decisions in Hooper and Curry for

the proposition that documented permanent reduction in range of motion supports an award for projected pain and suffering. He argues that because his symptoms have been persistent for two years post-surgery, this is consistent with a permanent deficit. Petitioner argues in his reply brief that the medical records do not have to be -- do not have to explicitly indicate that an injury is permanent. That's true. In Hooper, the Petitioner had merely reached a plateau in his recovery and was thought unlikely to improve.

In this case, however, the evidence does not favor the conclusion that Petitioner's condition has plateaued. In his motion, Petitioner describes his recovery as slowed by unrelated back pain, but he states of his condition in the first half of 2025 that he "made steady but incomplete progress in shoulder mobility and strength during this therapy period. While residual deficits in posture, scapular stability, and shoulder function persisted, he had improved sufficiently to manage an independent home program following discharge". That quote is from ECF Number 79 at page 20.

The most recent medical records that have been filed, which are Exhibits 26 and 27, confirm that as of July 2025, Petitioner was continuing to improve despite having ongoing limitations due to pain. The more up-to-date medical records include no medical opinion indicating that

Petitioner's condition had reached maximum medical improvement. Instead, they reflect that Petitioner had been "doing well until just recently" when he had a setback with increased shoulder pain. However, the orthopedist recommended only conservative measures and Petitioner's subsequent physical therapy documented ongoing improvement.

In multiple prior decisions, the Chief Special Master has expressed that residual symptoms can be accounted for in the magnitude of the award for actual pain and suffering when there is insufficient evidence that they will have a significant effect in the future. For that proposition, I cite Miller v. Secretary of Health and Human Services, Number 21-1559V, which is 2023 WL 2474322 at page 8, Court of Federal Claims Special Master Decision, March 13th, 2023; and Devlin v. Secretary of Health and Human Services, Number 19-191V, 2020 WL 5512505 at page 4, Special Master decision, August 7th, 2020. I apply the same reasoning in this case, and I note that I have accounted for the uncertainty in Petitioner's later presentation in determining the appropriate amount for actual pain and suffering.

In fact, this consideration contributed significantly to the finding that Petitioner should be awarded an amount comparable to the Tumolo Petitioner,

despite the variations in the presentation of this Petitioner versus the Tumolo Petitioner.

That concludes the ruling. Petitioner has confirmed as part of your argument that there are no claims for loss of earnings or lost wages, so the award for actual pain and suffering of $170,000 is the complete award, and I intend to issue a short-form decision adopting this ruling for purposes of the case proceeding to any potential motion for review and entry of judgment.

So, with that, let's go ahead and go off the record.

(Whereupon, at 1:29 p.m., the proceedings were adjourned.)